IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-HC-2005-FL

| | | |
|---|---|---|
| MELVIN E. HAGANS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOYCE KORNEYGAY, | ) | |
| ADMINISTRATOR OF DURHAM | ) | |
| CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | |

This matter came before the court on the motion for summary judgment (DE # 8) pursuant to Federal Rule of Civil Procedure 56 of respondent Joyce Korneygay, Administrator of Durham Correctional Institution.[1] The issues raised now are ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment.

## STATEMENT OF CASE

On December 16, 2004, in Pitt County Superior Court, petitioner was convicted of possession of a firearm by a felon, assault with a deadly weapon, discharge of a firearm into an occupied vehicle, and three counts of attempted discharge of a firearm into an occupied vehicle. (Am. Pet. ¶¶ 1, 2, 5.) He was sentenced to an aggregate sentence of one hundred eight (108) to one hundred fifty (150) months imprisonment. (Id. ¶ 3.) Petitioner challenged his conviction before the North

---

[1] Also before the court is the motion to amend (DE # 4) filed by petitioner Melvin Earl Hagans to name Joyce Kornegay as the Administrator of Durham County Correctional Institution pursuant to Fed. R. Civ. P. 19(a)(1) and Rule 2 of the Rules Governing 2254 Cases. Where no opposition has been raised, the motion to amend is ALLOWED.

Carolina Court of Appeals, which vacated petitioner's conviction for possession of a firearm by a felon, and remanded the matter to the trial court for resentencing. See State v. Hagans, 177 N.C. App. 17, 32-33, 628 S.E.2d 776, 786-87 (2006). The court of appeals found no other error with petitioner's trial. Id.

On February 22, 2007, petitioner was re-sentenced in Pitt County Superior Court to an aggregate term of ninety-four (94) to one hundred fifty (150) months imprisonment. This sentence included multiple terms of twenty-three (23) to thirty-seven (37) months imprisonment for each of the convictions for discharge of a firearm into occupied property and attempted discharge of a firearm into occupied property as well as sixty (60) days for the conviction of assault with a deadly weapon. See State v. Hagans, 188 N.C. App. 799, 801, 656 S.E705.2d 704, 705-06 (2008). Petitioner again filed a notice of appeal to the North Carolina Court of Appeals, which found no error in part and dismissed petitioner's appeal in part. Id. Petitioner then filed a petition for discretionary review with the North Carolina Supreme Court, which denied his petition on October 8, 2008. See State v. Hagans, 362 N.C. 511, 668 S.E.2d 344 (2008).

On January 8, 2010, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner alleges that the imposition of consecutive sentences for discharge of a firearm and attempted discharge of a firearm violated his rights pursuant to the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution. Petitioner also alleges that following the court of appeals' vacatur of his possession of a firearm conviction, the trial court re-sentenced him to a greater sentence in violation of the Due Process Clause of the of the Fourteenth Amendment of the United States Constitution. On February 18,

2

2010, respondent filed a motion for summary judgment arguing that petitioner's habeas petition is without merit. Petitioner filed a response on April 19, 2010.

**STATEMENT OF THE FACTS**

The facts as stated by the North Carolina Court of Appeals in petitioner's second appeal before that court are summarized as follows:

> William Parker ("Parker") was robbed at gunpoint on 20 June 2004 by two masked, black males. After the assailants drove away, Parker entered his vehicle and chased after them. During the chase, Parker "observed a muzzle flash from inside the Cadillac and heard a gunshot.... The chase continued for several minutes during which an arm and pistol emerged from the rear passenger window four times. Seven shots were fired toward Parker's car." The assailants eventually eluded Parker but were stopped by police, and "[a]fter arriving home and inspecting his vehicle, Parker observed a small hole below the front grill of his vehicle, which appeared to be a bullet hole."

Hagans, 188 N.C. App. at 800, 656 S.E.2d at 705 (internal citations omitted).

**DISCUSSION**

A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

3

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

4

Case 5:10-hc-02005-FL   Document 17   Filed 09/29/10   Page 4 of 12

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

B.   Analysis

    1.   Double Jeopardy Claim

Petitioner argues that his convictions for both discharge of a firearm into occupied property and attempted discharge of a firearm into occupied property violate the Double Jeopardy Clause. Petitioner also argues that his three separate convictions for the offense of attempted discharge of a firearm into occupied property violates the double jeopardy clause. The North Carolina Court of Appeals adjudicated this claim and found it to be without merit. Specifically, that court stated:

> Defendant contends that his three convictions for attempted discharge of a firearm into an occupied vehicle violated double jeopardy because the indictments were identical. This same argument, however, was rejected in State v. Rambert, 341 N.C. 173, 459 S.E.2d 510, in which our Supreme Court was presented with a double jeopardy challenge to multiple indictments under section 14-34.1. In Rambert, the "indictments were identical and did not describe in detail the specific events or evidence that would be used to prove each count." Rambert, 341 N.C. at 176, 459 S.E.2d at 512. The Court, however, held that the indictments were sufficient since "indictments need only allege the ultimate facts constituting each element of the criminal offense." Id. Nevertheless, the Court acknowledged that "[b]ecause a very detailed account is not necessary for legally sufficient indictments, examination of the indictments is not always dispositive on the issue of double jeopardy." Id. The Court, therefore, examined the facts underlying each charge and noted that the evidence showed that the defendant fired three separate shots, holding that "[e]ach shot, fired from a pistol, as opposed to a machine gun or other automatic weapon, required that defendant employ his thought processes each time he fired the weapon. Each act was distinct in time, and each bullet hit the vehicle in a different place." Id. at 176-77, 459 S.E.2d at 513; accord State v. Nobles, 350 N.C. 483, 505, 515 S.E.2d 885, 898-99 (1999) (holding that since "[t]he State's evidence at trial tended to show the existence of seven bullet holes in the victim's vehicle," the defendant was properly indicted for seven separate violations of section 14-34.1). The Rambert Court "conclude[d] that [the] defendant's conviction and sentencing on three counts

5

of discharging a firearm into occupied property did not violate double jeopardy principles." Rambert, 341 N.C. at 177, 459 S.E.2d at 513.

The facts of the instant case are virtually indistinguishable from Rambert. Each of the indictments alleged that "defendant ... unlawfully, willfully and feloniously did discharge a handgun, a firearm, into a motor vehicle, to wit: a 2004 GMC Yukon, while it was actually occupied by William Robert Parker." Although the indictments at issue were identical, they satisfied the requirement that they "allege the ultimate facts constituting each element of the criminal offense." Id. at 176, 459 S.E.2d at 512. Each indictment alleged that defendant willfully and wantonly discharged a firearm into property while it was occupied. See N.C. Gen.Stat. § 14-34.1 (2005). Additionally, the State's evidence tended to show that seven shots were fired toward Parker's car and that one bullet hole was found in Parker's car. Based upon the evidence, it is conceivable that defendant could have been indicted for six counts of attempted discharge of a firearm into occupied property. Therefore, defendant was not placed in double jeopardy as a result of the convictions for attempted discharge of a firearm into occupied property based upon the three separate indictments of discharge of a firearm into occupied property. Accordingly, defendant's arguments are overruled.

Hagans, 188 N.C. App. at 804-05, 656 S.E.2d at 708.

The double jeopardy clause prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 717 (1969), companion case overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). When consecutive sentences are imposed upon the conclusion of a single criminal trial, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977).

Where a multiple-punishment-for-single offense claim of double jeopardy is made, the first inquiry is "whether the legislature intended that an arguably single or continuous criminal episode could result in multiple 'units of prosecution' based upon particular factors of time or other circumstances dividing the whole into discrete parts." Thomas v. Warden, Md. State Penitentiary,

6

683 F.2d 83, 84 (4th Cir. 1982); see also Garrett v. United States, 471 U.S. 773, 779 (1985) ("There is nothing in the Constitution which prevents [the legislature] from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction."(quoting Albrecht, 273 U.S. 1, 11 (1927))). Generally the court conducts the test set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932), by looking to whether each offense requires "proof of a fact which the other does not." However, the Blockburger rule provides only a tool to divine legislative intent; it does not create a conclusive presumption of law. Garrett, 471 U.S. at 779. Moreover, "[w]hen the claim is made in relation to state offenses, federal courts are essentially bound by state court interpretations of state legislative intent." Thomas, 683 F.2d at 85.

North Carolina General Statutes § 14-34.1 provides: "Any person who willfully or wantonly discharges or attempts to discharge any firearm . . . into any . . . vehicle . . . while it is occupied is guilty of a Class E felony." Generally, "attempt is an offense included in the completed crime, and, therefore cannot support a separate sentence and conviction." United States v. York, 578 F.2d 1036, 1040 (5th Cir. 1978). This rule applies, however, where multiple convictions and sentences are based on a single act or transaction, and does not apply where the completed crime is factually distinct from the attempted offense. Blockburger, 284 U.S. at 304; United States v. McDonald, 692 F.2d 376, 377-80 (5th Cir. 1982).

Respondent argues that the offense of discharging a firearm into occupied property and the three offenses of attempt to discharge a firearm into occupied property require the proof of a different, separate fact, i.e., a different gunshot fired at the vehicle. In this case, the court of appeals noted that seven shots had been fired at Parker's vehicle, and the court's own review of the record indicates that at least six such shots were fired: the first when Parker entered Highway 43, two more while Parker

7

was on the Highway 264 on-ramp bypass, another while Parker was on the Highway 264 bypass, and two more at the bottom of the exit on-ramp to Highway 264.[2] (Tr. 62.) Accordingly, the court of appeals found, and the record reflects, that petitioner could be convicted for each of these attempts. Petitioner has not presented evidence sufficient to rebut the presumption of correctness in the court of appeals' factual findings on this matter. See 28 U.S.C. § 2254(e)(1).

Because each conviction required proof of a fact that was not necessary for the other, there was no violation of double jeopardy. This interpretation is consistent with the North Carolina Supreme Court's adjudication of a similar claim in State v. Rambert, 341 N.C. 173, 459 S.E.2d 510 (1995), cited by the North Carolina Court of Appeals. These state court decisions "unmistakably establish as a matter of state law that separate offenses and punishments are legislatively contemplated" in the situation present, and the court "therefore consider[s] the matter one authoritatively settled by longstanding, consistent state judicial interpretations that foreclose any federal double jeopardy claim." Based upon the foregoing, petitioner is unable to show that the adjudication of the court of appeals was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, respondent is entitled to summary judgment for petitioner's double jeopardy claim.

2. Due Process Claim

In his second claim, petitioner alleges that his due process rights were violated because the trial court judge re-sentenced petitioner to an increased sentence following a successful appeal in violation of the United States Supreme Court's ruling in North Carolina v. Pearce, 395 U.S. 711

---

[2] The court of appeals states that a total of seven shots were fired at the victim's car. Hagans, 656 S.E.2d at 705. As noted, the court's review of the evidence in the record indicates that a total of six shots were fired at the victim. This discrepancy has no effect on the adjudication of petitioner's claim.

8

(1969). The court of appeals adjudicated this claim and found it to be without merit. In making its determination, the court of appeals stated:

> [D]efendant argues in his brief that (1) "Judge Grant appeared to make up his mind on the sentence before the evidence was heard"; and (2) Judge Grant "went to great lengths to fashion a sentence" and "went to the extraordinary step of 'unconsolidating' previously consolidated sentences in order to duplicate the original sentence." Having reviewed his arguments *de novo* . . . we hold that defendant's arguments are wholly without merit.
>
> First, . . . defendant has not demonstrated, much less attempted to demonstrate, how Judge Grant had "'a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case.'" Furthermore, although defendant laments that the trial court changed the manner in which it originally consolidated his sentences, defendant expressly *consented* to "a resentencing of all the charges rather than a resentencing restricted to the misdemeanor of assault with a deadly weapon." See State v. Ransom, 80 N.C.App. 711, 713, 343 S.E.2d 232, 234 ("[N]othing prohibits the trial court from changing the way in which it consolidated convictions during a sentencing hearing prior to remand."), cert. denied, 317 N.C. 712, 347 S.E.2d 450 (1986); see also State v. Mitchell, 67 N.C.App. 549, 551, 313 S.E.2d 201, 202 (1984) ("For all intents and purposes the resentencing hearing is *de novo* as to the appropriate sentence."). Additionally, defendant contends that notes taken by the judge during the sentencing hearing may demonstrate a strained attempt to calculate a sentence mirroring the duration of the original sentence. However, the record demonstrates that the sentencing judge carefully weighed arguments by counsel as well as the mitigating factors offered by defendant, and there is no indication that the sentencing judge attempted to calculate a sentence mirroring the duration of the original term. In fact, a review of the record reveals that the judge ultimately sentenced defendant in the mitigated range to a total term of imprisonment *less* than the original sentence. Defendant originally was sentenced to 108 to 150 months imprisonment. After deducting the thirteen- to sixteen-month presumptive range for defendant's vacated conviction for possession of a firearm by a felon, *see* N.C. Gen.Stat. §§ 14-415.1(a), 15A-1340.17(c) (2005), defendant's sentence would total ninety-five to 134 months. This range would be reduced further by the statutory credit provided by North Carolina General Statutes, section 15A-1354(b):
>
> In determining the effect of consecutive sentences ... and the manner in which they will be served, the Department of Correction must treat the defendant as though he has been committed for a single term with the following incidents:

9

> (1) *The maximum prison sentence consists of the total of the maximum terms of the consecutive sentences, less nine months for each of the second and subsequent sentences imposed for Class B through Class E felonies;* and
>
> (2) The minimum term consists of the total of the minimum terms of the consecutive sentences.
>
> N.C. Gen.Stat. § 15A-1354(b) (2005) (emphasis added). Defendant's original consecutive sentences included two Class E felonies, and therefore, pursuant to section 15A-1354(b), the maximum term of defendant's total original sentence would be reduced by nine months, yielding a total original sentence of ninety-five to 125 months imprisonment.
>
> Conversely, defendant's new sentence of ninety-four to 150 months imprisonment consists of four Class E felonies and, therefore, would be reduced by three nine-month credits pursuant to section 15A-1354(b). *See id.* After deducting the three credits totaling twenty-seven months from the maximum term of defendant's new sentence, defendant's new sentence amounts to ninety-four to 123 months. As a result, the minimum term of defendant's new sentence is *one month less* than the corresponding term of defendant's original sentence, and his new maximum term is *two months less* than his original maximum term. Therefore, after deducting the sentence for the conviction vacated by this Court and after granting defendant the full benefit of the statutory credits in section 15A-1354(b), defendant actually received a more favorable sentence on remand, and his arguments that the sentencing judge was biased and sentenced defendant more harshly on remand are without merit. Accordingly, defendant's assignment of error is overruled.

Hagans, 656 S.E.2d at 707 (footnotes omitted; some citations omitted).

A defendant's due process rights are violated where a judge vindictively re-sentences him to a harsher sentence after successfully exercising his constitutional right to appeal. Pearce, 395 U.S. at 725. "In order to assure the absence of such a [vindictive] motivation, . . . the reasons for [imposing the increased sentence] must affirmatively appear" and must "be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Id. at 726.

10

The trial court did not provide petitioner with a harsher sentence for any of his convictions at his re-sentencing. Rather, the trial court merely changed the manner in which it consolidated petitioner's sentences. Petitioner has not carried his burden of establishing that the decision of a trial court to change the manner of consolidation is contrary to or involved an unreasonable application of clearly established federal law.[3] Moreover, as stated by the court of appeals on review of petitioner's re-sentencing, the aggregate term of imprisonment petitioner received at his re-sentencing is actually <u>less</u> than the aggregate term of his original sentence based on state law application of statutory credit reductions to consecutive sentences. Finally, there is no evidence in the record that the trial court acted with bias at petitioner's re-sentencing. Accordingly, petitioner's second claim is without merit.

C. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

---

[3] Petitioner and respondent recite a number of cases in which this practice is discussed, but these cases are not determinative of the question before the court because none of them establishes a federal rule as set forth by the Supreme Court of the United States.

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, petitioner's motion to amend (DE # 4) is GRANTED. Respondent's motion for summary judgment (DE # 8) also is GRANTED. The Certificate of Appealability is DENIED. The Clerk is DIRECTED to close this case.

SO ORDERED, this the 28th day of September, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge